1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HAROLD E. CARMONY,

11           Plaintiff,                    No. CIV S-05-1679 LKK GGH P

12       vs.

13   COUNTY OF SACRAMENTO, et al.,

14           Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17           Plaintiff is civilly detained pursuant to the California Sexually Violent Predator's

18   Act (SVPA).  He is proceeding with a civil rights action pursuant to 42 U.S.C. § 1983 against

19   Sacramento County and Sheriff Lou Blanas regarding conditions in the Sacramento County Jail.

20   This action is proceeding on the amended complaint filed August 28, 2006.

21           Pending before the court are cross-motions for summary judgment.  Defendants

22   filed their motion on July 20, 2007.  Plaintiff filed his motion on October 22, 2007.  The court

23   recommends that defendants' motion be granted in part and denied in part.  The court

24   recommends that plaintiff's motion be denied.

25   /////

26   /////

1

1  II.  Summary Judgment Standards Under Rule 56

2         Summary judgment is appropriate when it is demonstrated that there exists "no

3  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4  matter of law."  Fed. R. Civ. P. 56(c).

5         Under summary judgment practice, the moving party

6         always bears the initial responsibility of informing the district court
          of the basis for its motion, and identifying those portions of "the
7         pleadings, depositions, answers to interrogatories, and admissions
          on file, together with the affidavits, if any," which it believes
8         demonstrate the absence of a genuine issue of material fact.

9  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

10  P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

11  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

12  depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

13  should be entered, after adequate time for discovery and upon motion, against a party who fails to

14  make a showing sufficient to establish the existence of an element essential to that party's case,

15  and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

16  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

17  necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

18  should be granted, "so long as whatever is before the district court demonstrates that the standard

19  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

20  2553.

21         If the moving party meets its initial responsibility, the burden then shifts to the

22  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

23  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

24  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

25  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

26  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

2

1   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

2   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

3   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

4   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

5   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

6   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

7   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8          In the endeavor to establish the existence of a factual dispute, the opposing party

9   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

12   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

13   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

14   56(e) advisory committee's note on 1963 amendments).

15          In resolving the summary judgment motion, the court examines the pleadings,

16   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

18   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

19   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

20   at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

21   obligation to produce a factual predicate from which the inference may be drawn.  See Richards

22   v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

23   (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

24   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

25   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

26   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

1    On August 4, 2006, the court advised plaintiff of the requirements for opposing a

2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

4  1988).

5  III.  Discussion

6    It is undisputed that plaintiff was held at the Sacramento County Jail from June

7  18, 1999, through May 23, 2000, and from December 29, 2005, through February 8, 2006.

8  Plaintiff was incarcerated at the jail while undergoing court proceedings pursuant to the SVPA.

9  Plaintiff argues that the conditions at the jail were unconstitutional.

10    Defendants argue that plaintiff's opposition/cross-motion for summary judgment

11  does not address all of the issues raised in the amended complaint which were addressed in

12  defendants' motion.  While plaintiff's briefing does not address every issue in detail, he filed a

13  response to defendants' statement of undisputed facts.  The court finds that plaintiff has opposed

14  the issues addressed by defendants' statement of undisputed facts even though plaintiff's

15  memorandum in support of his opposition/cross-motion does not specifically address each claim.

16    Finally, as to several claims, defendants argue that they are entitled to summary

17  judgment as a matter of law.  For that reason, the court did not set forth a statement of undisputed

18  facts and relied on the allegations in the verified amended complaint.

19    A.  Statute Limitations/Res Judicata

20    Defendants argue that plaintiff's claims challenging the jail conditions from June

21  18, 1999, through May 23, 2000, are barred by the statute of limitations as well as by the doctrine

22  of res judicata.  In his cross-motion/opposition filed October 25, 2007 (court file doc. # 58)

23  plaintiff states that he concedes that his claims regarding conditions at the jail from June 18,

24  1999, through May 23, 2000, are barred by the doctrine of res judicata.  Doc. # 58, pages 67-69

25  of 118.  Plaintiff indicates that should this action go to trial, he intends to offer evidence

26  regarding the conditions at the jail during this time in support of his claim that the conditions at

4

1  the jail from December 29, 2005, through February 8, 2006, were unconstitutional.

2            Defendants' arguments that the claims regarding June 18, 1999, through May 23,

3  2000, are barred by the statute of limitations and res judicata appear to have merit.  However,

4  because plaintiff indicates that he is not raising claims regarding jail conditions during this time,

5  the court need not address these arguments.  Rather, the court finds that these claims are not part

6  of the instant action.  Whether plaintiff may introduce evidence regarding jail conditions during

7  this time in support of his claim challenging jail conditions during the later period will be

8  addressed at trial.

9            B. Conditions at the Jail:  December 29, 2004, through February 8, 2005

10           The first amended complaint contains twenty-nine causes of action that can be

11 distilled into the following claims:

12           1.  Access to courts, right to peaceable assembly and to petition the government

13 under the First Amendment (claim 1).

14           2.  Unreasonable search and seizure under the Fourth Amendment (claims 2 and

15 20).

16           3.  Ex Post Facto Clause (claims 3 and 12).

17           4.  Double Jeopardy (claims 4 and 15).

18           5.  Cruel and unusual punishment in violation of the Eighth Amendment (claims

19 5, 10, 11, 17 and 18).

20           6.  Substantive due process under the Fourteenth Amendment (claims 6, 13, 16,

21 17, 18, 22, 25, 26, 27, 28 and 29).

22           7.  Equal Protection (claims 7, 14, and 19).

23           8.  Access to courts and confidential communications with attorney under the First

24 and Sixth Amendments (claims 8 and 21).

25           9.  Right to privacy (claim 9).

26 \\\\\\

5

1      10.  Freedom of expression and religion under the First Amendment (claims 23

2  and 24).

3      11.  Various claims for relief under the California Constitution.

4      *Claim1*: *Right to Assemble, etc.*

5      Claim 1 alleges that defendants violated plaintiff's First Amendment right to

6  assemble peacefully and to access the courts by denying him access to television, radio,

7  computers, reading materials and by limiting his telephone access.  Defendants also allegedly

8  violated these rights by keeping plaintiff locked in his cell except for five hours per week.

9      Defendants move for summary judgment on grounds that plaintiff admitted during

10  his deposition that he had access to two televisions, a daily newspaper and books while in the

11  dayroom.  Defendants also argue that because plaintiff was in court almost every day during the

12  at-issue period of time, he was not locked in his cell as alleged.

13      Although plaintiff labels claim 1 as a violation of his right to freedom of

14  association, the court construes these allegations to be alleging a violation of his right to

15  substantive due process.[1]

16

17  [1]  In any event, plaintiff has not stated a colorable freedom of association claim.
    The freedom of association has been described as follows:

18      Our decisions have referred to constitutionally protected "freedom of
    association" in two distinct senses.  In one line of decisions, the Court has
19      concluded that choices to enter into and maintain certain intimate human
    relationships must be secured against undue intrusion by the State because of the
20      role of such relationships in safeguarding the individual freedom that is central to
    our constitutional scheme.  In this respect, freedom of association receives
21      protection as a fundamental element of personal liberty.  In another set of
    decisions, the Court has recognized a right to associate for the purpose of
22      engaging in those activities protected by the First Amendment–speech, assembly,
    petition for the redress of grievances, and the exercise of religion.  The
23      Constitution guarantees freedom of association of this kind as an indispensable
    means of preserving other individual liberties.
24      The intrinsic and instrumental features of constitutionally protected
    association may, of course, coincide.
25  Roberts v. United States Jaycees, 468 U.S. 609, 617-618, 104 S.Ct. 3244, 3249-50 (1984).

26      Plaintiff's claim that defendants did not let him have access to television, etc. and

6

1        *Legal Standard*

2                As a civil detainee, the applicable standard for plaintiff is not the more restrictive

3    standards for cruel and unusual punishment under the Eighth Amendment; rather, "'the more

4    protective fourteenth amendment standard applies to conditions of confinement when detainees

5    ... have not been convicted' of a crime." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004),

6    quoting Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir, 1987), citing Youngberg v. Romeo,

7    457 U.S. 307, 102 S. Ct. 2452 (1982) (civilly committed individuals), and Bell v. Wolfish, 441

8    U.S. 520, 99 S. Ct. 1861 (1979).

9                The Fourteenth Amendment requires the government to do more
             than provide the "minimal civilized measure of life's necessities,"
10            Rhodes [v. Chapman], 452 U.S. [337] at 347, 101 S.Ct. 2392, for
             non-convicted detainees. Rather, "due process requires that the
11            nature and duration of commitment bear some reasonable relation
             to the purpose for which the individual is committed." Jackson v.
12            Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845 [] (1972).

13            The case of the individual confined awaiting civil commitment
             proceedings implicates the intersection between two distinct
14            Fourteenth Amendment imperatives. First, "[p]ersons who have
             been involuntarily committed are entitled to more considerate
15            treatment and conditions of confinement than criminals whose
             conditions of confinement are designed to punish." Youngberg,
16            457 U.S. at 321-22, 102 S.Ct. 2452.  Second, when the state
             detains an individual on a criminal charge, that person, unlike a
17            criminal convict, "may not be *punished* prior to an adjudication of
             guilt in accordance with due process of law.'" Bell, 441 U.S. at
18            535, 99 S.Ct. 1861 (emphasis added); see also Demery v. Arpaio,
             378 F.3d 1020, 1029 (9th Cir.2004) ("[T]he Fourteenth
19            Amendment prohibits all punishment of pretrial detainees.").  As
             civil detainees retain greater liberty protections than individuals
20            detained under criminal process, see Youngberg, 457 U.S. at 321-
             24, 102 S.Ct. 2452, and pre-adjudication detainees retain greater

21

22    held him in his cell for lengthy periods of time does not implicate the freedom of association
      protecting certain intimate human relationships.
23            The second aspect of freedom of association above protects groups whose
      activities are explicitly stated in the amendment: speaking, worshiping and petitioning the
24    government.  Id. at 622-623, 104 S.Ct at 3252.  Plaintiff's second claim does not implicate this
      freedom of association because plaintiff does not allege that he is a member of a group whose
25    activities involve speaking, worshiping and petitioning the government.  Rather, plaintiff's claim
      is based on his own inability to read newspapers, etc. and to leave his cell as often as he likes.
26    His allegations do not state a claim for violation of the right to freedom of association.

                                                    7

liberty protections than convicted ones, see Bell, 441 U.S. at 535-36, 99 S.Ct. 1861, it stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.

Jones v. Blanas, 393 F.3d at 931-932.

In Jones v. Blanas, where the plaintiff was, like plaintiff herein, an individual detained in a county jail awaiting involuntary civil commitment proceedings under the SVPA, the Ninth Circuit found "that the conditions of confinement for an individual detained under civil process but not yet committed must be tested by a standard at least as solicitous to the rights of the detainee as the standards applied to a civilly committed individual and to an individual accused but not convicted of a crime." Id., at 932.

While the Jones Court noted that the Eleventh Circuit[2] has gone so far as to hold that it is unconstitutional for individuals awaiting involuntary civil commitment proceedings to be held in jail at all, the Ninth Circuit did not venture so far, but asserted that "[a]t a bare minimum," such an individual cannot be subjected to conditions amounting to punishment. Id., at 932 [citations omitted].

Because a person detained pending confinement under the SVPA is a civil detainee, "an SVPA detainee is entitled to 'more considerate treatment' than his criminally detained counterparts." Id., citing Youngberg, 457 U.S. at 321-22. "[W]hen a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" Id., citing Sharp v. Weston, 233 F.3d 1166, 1172-73 (9th Cir. 2000) (Youngberg required that those civilly confined at a commitment center must receive "more considerate" treatment than inmates at a correctional center where the commitment center was located).

[2] See Lynch v. Baxley, 744 F.2d 1452 (11th Cir. 1984).

8

1    In addition, "when an individual awaiting SVPA adjudication is detained under

2    conditions more restrictive than those the individuals would face following SVPA confinement,

3    we presume the treatment is punitive." Jones v. Blanas, 393 F.3d at 933.

4           In sum, a civil detainee awaiting adjudication is entitled to
     conditions of confinement that are not punitive. Under Bell and our

5           circuit precedent, a restriction is "punitive" where it is intended to
     punish, or where it is "excessive in relation to [its non-punitive]

6           purpose," Demery, 378 F.3d at 1028..., or is "employed to achieve
     objectives that could be accomplished in so many alternative and

7           less harsh methods," Hallstrom, 991 F.2d at 1484.... With respect
     to an individual confined awaiting adjudication under civil process,

8           a presumption of punitive conditions arises where the individual is
     detained under conditions identical to, similar to, or more

9           restrictive than those under which pretrial criminal detainees are
     held, or where the individual is detained under conditions more

10          restrictive than those he or she would face upon commitment.
     Finally, to prevail on a Fourteenth Amendment claim regarding

11          conditions of confinement, the confined individual need not prove
     "deliberate indifference" on the part of government officials.

12

13   Jones v. Blanas, 393 F.3d at 933-34.

14          *Analysis*

15          It is undisputed that plaintiff had three to five hours of dayroom access per week.

16   However, in the amended complaint plaintiff alleges that this access was often in the middle of

17   the night at which time plaintiff was expected to shower and shave.  Amended Complaint, ¶ 39.

18          In their opposition, defendants argue that plaintiff's complaint does not adequately

19   support his motion/opposition. "[A] verified complaint may serve as an affidavit for purposes of

20   summary judgment if 1) it is based on personal knowledge and if 2) it sets forth the facts with

21   requisite specificity." Moran v. Selig, 447 F.3d 748, 760 n. 16 (9th Cir. 2006).  Plaintiff's

22   allegations regarding dayroom access in the amended complaint are based on personal

23   knowledge and sufficiently specific.

24          Defendants have submitted the declaration of Deputy Philip Daw, who addresses

25   dayroom access.  According to Deputy Daw, the dayroom is not open during lockdown times

26   which occur during meal time which is three times a day, medication distribution which is twice

a day, court runs which occur in the morning and afternoons, and lights out which is generally

from 11 p.m. to 7 a.m.  Daw declaration, ¶ 16.  Regarding access to the dayroom by civil

detainees, Deputy Daw states, in relevant part,

> 13.  At maximum capacity, Sacramento County Main Jail ("Main Jail") can hold 2,432 inmates.  The general layout of the jail is described as follows.  The Main Jail houses inmates on six floors, with each floor having an east and west wing (also known as east floor and west floor).  Two deputies are assigned to monitor each wing.  Each wing consists of three pods.  Each pod comprises of upstairs and downstairs cells.  Each pod has approximately thirty-two (32) cells, with sixteen (16) cells upstairs and sixteen (16) cells downstairs.  Each cell has a double bunk, which can house two (2) inmates.  Thus, each pod can hold approximately sixty-four (64) inmates at a time, each wing can hold 192 inmates, and each floor can hold 384 inmates.

> *****

> 15.  Each pod has a dayroom with a television, showers and phones.  The number of inmates actually using the dayroom at a time varies between one and thirty (1-30) inmates depending on the classification of the inmates.

> *****

> 19.  At most, there are between 5 and 8 civil inmates held in the Mail Jail at a time.  The average amount of inmates in the jail is 2,320.  In order to effectively operate the Mail Jail and maintain security, jail officials cannot shut down an entire pod, which holds 64 inmates, to house 5 to 8 civil inmates and let them have full access to the dayroom.  First, the jail simply does not have enough capacity to spare an entire pod to house only 5 to 8 inmates.  Second, even if the jail had the capacity, in which every other pod in the jail was at full capacity, such overcrowding of the pods would pose grave security concerns where inmates in such larger groups would be more likely to get into fights and other assaultive conduct.

When plaintiff had dayroom access is a materially disputed fact.  According to

Deputy Daw, dayroom access occurred during what could be characterized as reasonable hours.

According to plaintiff, he often received dayroom access in the middle of the night.  If plaintiff

regularly received dayroom access in the middle of the night, at which time he was expected to

shave, shower, etc., the court would find that he was being subject to punitive conditions of

\\\\\

\\\\\

\\\\\

10

1    confinement.  Accordingly, both plaintiff and defendants should be denied summary judgment as

2    to this claim.[3]

3         The also court observes that in his opposition, plaintiff argues that he was housed

4    in the T-Sep section of the jail.  In Jones v. Blanas, supra, the Ninth Circuit reversed a district

5    court order granting summary judgment to the Sacramento County Jail in a civil rights action

6    filed by an SVPA detainee housed in the T-Sep section of the jail.  The Ninth Circuit found that

7    the "significant limitations on, or total denials of, recreational activities, exercise, phone calls,

8    visitation privileges, out-of-cell time, access to religious services, and access to law library,

9    indicate that in numerous respects, confinement in T-Sep was substantially more restrictive than

10   confinement in the Main Jail."  393 F.3d at 934.  The Ninth Circuit remanded for the defendants

11   to show how the "bevy of restrictions" on the plaintiff in T-Sep was not excessive in relation to

12   the purpose of keeping civil and criminal detainees separate.  Id.

13        It is not clear from the instant record whether plaintiff was housed in T-Sep.

14   However, as will be discussed below, plaintiff challenges many of the conditions challenged in

15   Jones v. Blanas: denial of recreational activities, exercise, phone calls, visitation privileges, out-

16   of-cell time, access to religious services, etc.  The court has separately analyzed each of

17   plaintiff's claims below.

18                    *Claims 2 and 20: Search and Seizure*

19        It is undisputed that plaintiff was subject to pat-down searches while housed at the

20   jail.[4]  In particular, it is undisputed that plaintiff was subject to a pat-down search when he

---

21

22   [3]  Attached to plaintiff's opposition as exhibit A-20 are what appear to be copies of jail
     records for dayroom access for criminal prisoners and civil detainees from December 31, 2004,
23   to February 8, 2005, i.e. 41 days. The court may not consider these records because they are not
     properly authenticated.  See Fed. R. Evid. 901(a).  However, according to these records criminal
24   prisoners had dayroom access on 38 of those days and civil detainees had dayroom access on 23
     of those days.  These records also indicate that civil detainees had dayroom access at very late
25   hours on 12 of these 23 days.

26   [4]  Plaintiff does not allege that he was subject to body cavity searches during this second
     period of incarceration.

1    arrived at the jail in December 2004.  It is also undisputed that plaintiff was subject to pat-down

2    searches when he left or arrived at the jail, such as when he made court appearances.  Plaintiff

3    also alleges that he occasionally was subject to a pat-down search when he had an attorney visit.

4            The Fourth Amendment right to be secure against unreasonable searches and

5    seizures extends to SVPs.  Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007).  "The

6    watchword of the Fourth Amendment in every context is 'reasonableness.'"  Id.  "Of course, 'the

7    reasonableness of a particular search [or seizure] is determined by reference to the [detention]

8    context.'"  Id., quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  "There are

9    other concerns that mirror those that arise in the prison context, e.g., "'the safety and security of

10   guards and others in the facility, order within the facility and the efficiency of the facility's

11   operations.'"  Id., quoting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001).

12           Defendants argue that they are entitled to summary judgment as a matter of law by

13   citing Grummett v. Rushen, 779 F.2d 491 (9th Cir. 1985).  In this case, prisoners argued that pat-

14   down searches by female officers violated the Fourth Amendment.  779 F.2d at 495.  The

15   inmates "maintain[ed] that what are otherwise 'reasonable searches' become unreasonable when

16   conducted by a guard of the opposite sex."  Id.  The Ninth Circuit went on to analyze the

17   reasonableness of the searches based on the facts of the case.

18           In the instant action, neither party has addressed the reasonableness of the

19   challenged searches.  Defendants have put forward no evidence, for example, demonstrating why

20   pat-down searches were required when plaintiff left the jail for court, which is their burden.

21   Nevertheless, in adjudicating summary judgment motions, the undersigned need not leave all

22   common sense behind.  Plaintiff is in a jail setting with easy access to pre-trial detainees, prison

23   inmates awaiting court after-conviction court appearances, some of who are dangerous to others

24   and themselves.  Gang members and other anti-social individuals obviously are housed at times

25   in the jail facility.  Assaults, knifings and other dangerous behavior is potentially possible in any

26   such jail facility.  The every day occurrence of discovery of contraband, e.g., weapons, controlled

1  substance and the like is common knowledge.  If prison officials *did not* have a policy of at least

2  doing pat down searches of *all* residents going into and out of the facility, such unreasonable

3  inaction, likely to result in harm to many, would itself be an unconstitutional derogation of the

4  duty to reasonably ensure safety of all who reside within the jail walls.  Plaintiff's claim is

5  nonsensical.

6        Plaintiff also alleges that he was subject to unreasonable use of physical restraints.

7  At his deposition, plaintiff testified that he wore full restraints when transported to and from the

8  Atascadero State Hospital to the jail.  In the amended complaint, plaintiff alleges that he had to

9  wear handcuffs while being transported to and from the jail during the court proceedings.

10  Plaintiff was handcuffed to a bench in the court until he went into the courtroom.

11        The Due Process Clause protects pretrial detainees from the use of excessive force

12  that amounts to punishment.  <u>Graham v. Connor</u>, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865 (1989).

13  The Ninth Circuit has determined that the Fourth Amendment sets the "applicable constitutional

14  limitations" for considering claims of excessive force during a pretrial detention.  <u>Pierce v.</u>

15  <u>Multnomah County</u>, 76 F.3d 1032, 1043 (9th Cir. 1996).  Thus, though a pretrial detainee's

16  excessive force claim arises under the Due Process Clause, the claim is appropriately analyzed

17  under the Fourth Amendment's "objective reasonableness" standard.  <u>Graham</u>, 490 U.S. at 395.

18  This standard "requires a careful balancing of 'the nature and quality of the intrusion on the

19  individual's Fourth Amendment interests' against the counterveiling government interests at

20  stake."  <u>Id.</u> at 396, quoting <u>United States v. Place</u>, 462 U.S. 696, 703, 103 S.Ct. 2637 (1983)).

21  When employing the balancing test, the court must pay "careful attention to the facts and

22  circumstances in each particular case."  <u>Id.</u>

23        Defendants argue for summary judgment on grounds that plaintiff has not alleged

24  that the handcuffs or restraints were applied too tightly.  Rather, plaintiff is apparently objecting

25  that he was required to wear handcuffs and restraints at all.  Based on the standards set forth

26  above, the court does not find that a per se challenge to the use of restraints and handcuffs during

1    transport states a colorable Fourth Amendment excessive force claim.  Accordingly, defendants

2    are entitled to summary judgment as to this claim.

3              Plaintiff also argues that his property was searched without defendants first

4    establishing probable cause in violation of the Fourth Amendment.  Although not entirely clear,

5    these searches apparently occurred in plaintiff's jail cell.  A civil detainee has no reasonable

6    expectation of privacy in his jail cell.  See Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996).

7    Accordingly, the search of plaintiff's cell did not violate the Fourth Amendment.  Defendants

8    should be granted summary judgment as to this claim.

9              *Claims 3, 4, 12, 15*: *Ex Post Facto and Double Jeopardy*

10             In Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007) the Ninth Circuit held

11   that the civil nature of sexually violent predator commitment forecloses challenges based on

12   violations of the Ex Post Facto and Double Jeopardy clauses.  Accordingly, defendants should be

13   granted summary judgment as to these claims.

14             *Claims 5, 10, 11, 17 and 18: Eighth Amendment*

15             Plaintiff alleges that conditions at the jail violated the Eighth Amendment.

16   Because the state's power to punish under the Eighth Amendment expired at the end of

17   plaintiff's criminal sentence, the Eighth Amendment is not the proper vehicle to challenge the

18   conditions of civil commitment.  Hydrick v. Hunter, 500 F.3d at 994.  Accordingly, defendants

19   are entitled to summary judgment as to plaintiff's Eighth Amendment claims.

20             *Claims 6, 22: Unsanitary Conditions, Contaminated and Unhealthy Food*

21             In claim 6, plaintiff alleges that he was subjected to unsanitary conditions and

22   contaminated food.  Plaintiff alleges that when he arrived at his cell, it was "covered with

23   embedded grime, graffiti and human detritus."  Amended Complaint, ¶¶ 71, 60.  It took plaintiff

24   and his cellmate a day to clean the cell.  Id., ¶ 71.  Plaintiff alleges that he was unnecessarily

25   exposed to bodily wastes and fluids including feces, urine, semen, spit, blood and hair, especially

26   in the shower area.  Id., ¶ 50.  The floors were dirty, showers were frequently littered with paper,

14

1  dirt, used soap bars, used bandages, hair, urine, feces, semen, etc.  Id. ¶ 60.  Plaintiff also alleges

2  that only one of four showers in his pod functioned.  Id., ¶ 75.  Therefore, the more than 60

3  inmates in his pod had access to only one shower.  Id.  Plaintiff concedes that "[i]t is true that this

4  had a lot less impact upon the civil detainees because at the time there were only six of us in the

5  pod and we had approximately one hour to shower between us."  Id.  The light in plaintiff's cell

6  remained on all night long which affected plaintiff's ability to sleep.  Id., ¶ 60.  Plaintiff was

7  required to use a "communal electric razor" which was not cleaned between users.  Id.

8         Defendants argue that the conditions described above do not violate the

9  constitution.  The court finds plaintiff's allegations that his cell was embedded with grime and

10  graffiti to be non-actionable.  "Embedded with grime" is a very general description and not

11  something out of the ordinary even in civilian housing.  It is also unclear what plaintiff means

12  when he refers to human detritus.  Finally, it is unclear how plaintiff is claiming that graffiti

13  resulted in an unhygienic cell.  The court also observes that plaintiff was apparently subject to

14  these conditions for only one day, after he and his cellmate cleaned the cell.  In addition,

15  plaintiff's allegations regarding his shower access also fail to state a colorable Fourteenth

16  Amendment claim, as plaintiff concedes that one shower for the civil detainees was adequate.

17  For these reasons, defendants should be granted summary judgment as to these claims.

18         Defendants have not addressed plaintiff's claim that the light in his cell was on all

19  night.  Nor have they addressed his claim that he was required to use an unsanitary razor.  These

20  allegations state colorable Fourteenth Amendment claims.  However, whether these conditions

21  violate the Fourteenth Amendment is best left for a jury to decide.  Accordingly, neither party

22  should be granted summary judgment as to this claim.

23         Plaintiff also complains that he was exposed to bodily wastes, including feces,

24  urine, semen, spit and hair, especially in the shower.  Plaintiff claims that the showers were dirty,

25  frequently littered with paper, dirty, used soap, bandages, feces, semen, etc.

26  \\\\\

1       Plaintiff's general claim that he was exposed to bodily wastes, etc. is actionable

2  even if not completely defined here.  Plaintiff's description of the shower could constitute a

3  condition that subjected him to a condition in violation of the Fourteenth Amendment.  In

4  support of their opposition to plaintiff's summary judgment motion, defendants include the

5  declaration of Deputy Winn who states that the showers are cleaned every two days.  Winn

6  declaration, ¶ 2.  Considering that only six civil detainees used the shower, plaintiff's claims

7  regarding its lack of cleanliness are hard to believe if the shower was in fact cleaned every two

8  days.  Nevertheless, the court finds that whether plaintiff was required to use a shower that was

9  unhygienic is a materially disputed fact.  Accordingly, neither party should be granted summary

10  judgment as to this claim.

11       In claim 22, plaintiff alleges that he was not provided with nutritious and pleasing

12  food.  Plaintiff's allegations regarding unsanitary and unhealthy food are included in the section

13  of his amended complaint describing conditions at the jail from 1999-2000.  However, a liberal

14  reading of the amended complaint indicates that these conditions still existed in 2004-2005.  In

15  particular, plaintiff claims that the deputy trustees serving the food did not wear hairnets or

16  gloves.  Amended Complaint, ¶ 56.  The food was luke warm and sometimes cold.  Id.

17       Plaintiff's claims regarding how the food was served, i.e. by trustees not wearing

18  hairnets or gloves or sometimes cold, does not state a colorable Fourteenth Amendment claim.

19  These conditions do not rise to punishment in violation of the Fourteenth Amendment.

20       Plaintiff does not otherwise describe the food.  Nor does he allege that he did not

21  receive enough food.  Plaintiff also does not describe in any detail how the food was not

22  nutritious.  Plaintiff does not allege that the temperature of the food created a health hazard.

23  Rather, his allegations regarding food temperature are related to whether the food was appetizing.

24  This claim does not state a colorable Fourteenth Amendment claim.

25  \\\\\

26  \\\\\

1        *Claims 13, 28 and 29: Placement in the Jail*

2        In claim 13, plaintiff alleges that he was housed in conditions that were "counter

3   therapeutic."  In claim 28, plaintiff alleges that he should not have been housed in a county jail.

4   In claim 29, plaintiff alleges that should have been housed in a non-penal environment with

5   psychiatric staff trained and supervised by the Department of Mental Health.

6        The court construes claims 13, 28 and 29 to be a challenge to the fact of plaintiff's

7   placement in the Sacramento County Jail.  Defendants cite Munoz v. Kolender, 208 F. Supp. 2d

8   1125 (S.D. Cal. 2002) which rejected such a claim:

9            As discussed above, the detention scheme established by California's SVPA, like
             that of Washington and Kansas, is a civil process.  See Hendricks, 521 U.S. 346,
10           117 S.Ct. 2072.  The purpose of Munoz's court-ordered transfers to County Jail
             was to permit his participation in the judicial process, not to punish him.  See
11           McKune v. Lile, 536 U.S. 24, 122 S.Ct. 2017, 2027, 153 L.Ed.2d 47 (2002)
             (transfer of prisoner from medium security facility to less-desirable maximum
12           security unit, when not intended to punish prisoner, "is too ephemeral and
             insubstantial" to trigger Due Process protections) (quoting Meachum, 427 U.S. at
13           228, 98 S.Ct. 2532).  Moreover, an allegation that a state law has been violated is
             insufficient, without more, to raise a federal constitutional claim cognizable under
14           42 U.S.C. § 1983.  The 'right' under the SVPA to be housed at Atascadero rather
             than in County Jail pending SVP judicial determination proceedings does not
15           involve a federal constitutional right in and of itself, particularly as the United
             States Supreme Court has upheld confinement of SVPs in prison facilities in
16           segregation confinement.  See e.g., Hendricks, 521 U.S. 346, 117 S.Ct. 2072; see
             also Talhelm, 85 Cal.App.4th at 408 n. 5, 102 Cal.Rptr.2d 150; cf. Olim v.
17           Wakinekona, 461 U.S. 238, 244-48, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)
             (prisoners have no constitutional right to be housed in any particular institution).
18           This court concludes legitimate purposes are served, without infringing a SVPA
             detainee's constitutional rights, by the fact of temporary transfer and holding in
19           County Jail.

20   Munoz v. Kolender, 208 F. Supp. 2d at 1147-1148.

21       The court agrees with the reasoning of the district court in Munoz denying the

22   claim challenging the fact of the plaintiff's placement in county jail.  Pursuant to Munoz, the

23   court recommends that defendants be granted summary judgment as to claims 13, 28 and 29.

24       *Claim 16: Unsafe Cellmates*

25       In claim 16, plaintiff alleges that he was forced to house with persons who

26   were harmful to his physical, emotional and mental well being.

17

1    Defendants argue that they are entitled to summary judgment as to this claim

2  because plaintiff testified at his deposition that he was never physically harmed or threatened at

3  the jail.  Plaintiff does not dispute this statement.  In the amended complaint, plaintiff alleges that

4  he shared a cell with another SVP from Atascadero State Hospital.  Amended Complaint, p. 23, ¶

5  72.

6    Because there is no evidence in the record demonstrating that plaintiff was forced

7  to house with persons who were harmful to him, defendants should be granted summary

8  judgment as to this claim.

9    *Claim 17: Outdoor Exercise*

10    In claim 17, plaintiff alleges that he was denied adequate fresh air and sunshine on

11  a regular basis.  In the amended complaint, plaintiff alleges that he was offered outside recreation

12  on seven different occasions on a screened-in porch, exposed to the elements, early in the

13  morning when the weather was wet, windy or cold.  Amended Complaint, p. 23, ¶ 73.  Plaintiff

14  argues that the criminal prisoners were offered outdoor exercise at a more suitable time which

15  was also the time that civil detainees were offered dayroom.  Plaintiff suggests that the civil

16  detainees should have been offered outdoor exercise at the time the criminal prisoners received

17  it.[5]

18    Defendants move for summary judgment on grounds that it was plaintiff's choice

19  to decline outdoor exercise in the morning hours when the weather was not good.

20    The record does not address why plaintiff was offered outdoor exercise only seven

21  times during his 41 day incarceration at the jail.  It is possible that the weather was too inclement

22  for outdoor exercise.  It is also possible that jail officials could not offer plaintiff outdoor

23  exercise at other times on the seven days it was made available to plaintiff based on inclement

24

25    [5]  Attached to plaintiff's opposition/cross-motion as exhibit A-20 are jail logs reflecting
the dates and times that criminal prisoners and civil detainees had outdoor exercise beginning on
December 31, 2004, to February 8, 2005.  Because these records are not properly authenticated,

26  the court may not consider them.

1  weather.  Without more information, the court cannot find that either party is entitled to summary

2  judgment as to this claim.

3           *Claim 18*: *Adequate Clothing*

4           In claim 18, plaintiff alleges that he was not provided with sufficient nor clean

5  clothing.  Plaintiff alleges that he received only two changes of socks, tee-shirt and briefs per

6  week.  Amended Complaint, ¶ 34.  He also received one change per week of a jersey and pants.

7  Id.  Defendants argue that these allegations do not state a colorable Fourteenth Amendment

8  claim.

9           As discussed above, the Fourteenth Amendment requires the government to do

10 more than provide the minimal civilized measure of life's necessities.  Rhodes, 452 U.S. at 347.

11 The Fourteenth Amendment prohibits punishment of pretrial detainees.  Bell, 441 U.S. at 535.

12 Whether two changes of underclothing per week and one change of outer clothing per week

13 constitutes punishment in violation of the Fourteenth Amendment is a question best left to the

14 trier of fact, who may compare plaintiff's access to clean clothing to that given to his criminal

15 counterparts.  Accordingly, neither party should be granted summary judgment as to this claim.

16          *Claim 25: Visitation*

17          In claim 25, plaintiff alleges that he was denied his right to confidential family

18 visits.  Defendants move for summary judgment on grounds that plaintiff testified at his

19 deposition that he had no visitors during his second period of incarceration at the jail:

20          Q: All right.  Tell me about visitations during the second time around.  You
            mentioned before that civil detainees had to wait until there were no–
21
            A: That did not happen to me because my mother had died in the meantime.  And
22          the brother that I have out here is the one with emphysema and other problems
            and he needed his oxygen tanks even more than he did before.  In fact, he died a
23          short time later so that the restrictions on visiting didn't impact me except that
            people that would like to visit me knew of the problems because I'd warn them or
24          they already knew.

25 Plaintiff's Deposition, p. 78.

26 \\\\\

19

1    When questioned regarding which friends did not come to visit him, plaintiff

2  testified that he was not claiming that they would have come to visit him.  Id., pp. 78-79.

3  Plaintiff did not identify any of these people by name.  Id.

4    In his opposition/cross-motion, plaintiff now argues that his brother could not

5  visit him because the jail did not permit oxygen tanks in the visiting room.

6    Claim 25 alleges that plaintiff was not allowed confidential family visits.  Plaintiff

7  now appears to challenge the jail policy of not allowing oxygen tanks in the visiting room.  This

8  claim is different than the claim raised in the amended complaint.  Plaintiff may not amend his

9  claim in his opposition/cross-motion.  In any event, plaintiff has provided no evidence to support

10  his claim that he was denied confidential family visits.  For these reasons, defendants should be

11  granted summary judgment as to this claim.

12    *Claims 26*, 27: *Processing*

13    In claim 26, plaintiff alleges that he was not promptly processed in and out of

14  defendants' custody in a dignified manner.  In claim 27, plaintiff alleges that he was not

15  transported to his various destinations quickly and comfortably in civilian clothes with minimum

16  restraints.

17    Plaintiff's claims regarding use of restraints was addressed above and will not be

18  discussed further here.

19    Plaintiff alleges that upon arriving at the jail on December 24, 2004, he was held

20  in a basement booking area for 12 hours before being taken to the jail hospital for medical

21  review.  Amended Complaint, ¶ 69.  On December 30, 2004, he was moved to a cell in the jail

22  reception area that did not have hot water or cell lights.  Id., ¶ 70.  On December 31, 2004,

23  plaintiff was moved to the section of the jail housing civil detainees.  Id., ¶ 71.

24    Defendants' summary judgment motion generally argues that the conditions

25  described above do not violate the substantive due process clause of the Fourteenth Amendment.

26  Defendants are correct.  There is no doubt that being in a jail facility will result in actions and

20

1  conditions that might be considered inconvenient and burdensome on the outside.  The

2  Fourteenth Amendment does not require that civil detainees not be subject to some of those

3  inconveniences and burdens.  The running of a jail is a difficult proposition at best, and one must

4  keep reality in mind when adjudicating the rights of a civil detainee, the vast, vast majority of

5  residents within the jail require administrative policies which are tedious and time consuming.

6  None of the burdens plaintiff complains of either reach the level of action one could consider

7  punishment, or were imposed for so short a time that one cannot reasonably find that plaintiff

8  was being punished.  Defendants are entitled to summary judgment on these claims.

9          Regarding transportation to and from court, plaintiff alleges that a Sacramento

10  County Superior Court judge ordered the jail to allow plaintiff to use a wheelchair during

11  transportation to and from the court.  Amended Complaint, ¶ 77.  Plaintiff alleges that the jail

12  ignored the order until the judge issued a second order.  Id.  Plaintiff was then transported in a

13  medical van.  Id., ¶ 78.  Defendants argue that they are entitled to summary judgment on grounds

14  that plaintiff's transport in the medical van did not violate the Fourteenth Amendment.  The court

15  would agree but for the fact that according to plaintiff, it took two court orders for defendants to

16  provide plaintiff with this medical transport.  Without knowing the length of time between the

17  court orders and why it took two court orders for plaintiff to receive the medical transport, the

18  court cannot find that either party is entitled to summary judgment as to this claim.

19          *Claims 7, 14, 19: Equal Protection*

20          In claim 7 plaintiff alleges that defendants subjected plaintiff to more restrictive,

21  punitive and degrading conditions than other detainees in the jail.  In claim 14 plaintiff alleges

22  that defendants denied him his right to proper medical and mental health care in violation of the

23  Equal Protection Clause.  In claim 19, plaintiff alleges that defendants denied him his right to

24  adequate recreation and other mental stimulation in violation of the Equal Protection Clause.

25          The "Equal Protection Clause of the Fourteenth Amendment commands that no

26  State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

1   essentially a direction that all persons similarly situated should be treated alike." City of

2   Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).  In Hydrick

3   v. Hunter, the Ninth Circuit found that an SVP could state a colorable Equal Protection claim by

4   alleging that he was being treated more restrictively than other civilly committed patients.  500

5   F.3d at 998.

6           In the summary judgment motion, defendants argue that plaintiff has provided no

7   factual support for his claim that he was subjected to worse conditions than other civil detainees.

8   Defendants go on to argue that assuming plaintiff is correct, i.e. that he was subject to worse

9   conditions than other civil detainees, jail officials were justified in placing heavier restrictions on

10  SVP detainees than other civil detainees.

11          In his opposition, plaintiff does not specifically describe how he was treated

12  differently than other civil detainees.  See Court file doc. # 58, pp. 43-45.  In his statement of

13  undisputed facts and opposition to defendants' statement of undisputed facts (court file docs. #

14  53 and # 54), plaintiff also does not identify these conditions.  While the amended complaint

15  alleges that he received worse medical care, for example, plaintiff has presented no evidence

16  demonstrating that the medical care received by the other civil detainees was better.

17          For the reasons discussed above, the court recommends that defendants be granted

18  summary judgment as to plaintiff's Equal Protection claims.

19          *Claims 8 and 21: Access to Courts and Confidential Communication with*

20  *Attorney*

21          In order to state a colorable claim for denial of access to the courts, plaintiff must

22  allege that he suffered an actual injury.  Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174

23  (1996).  "Actual injury" means a "specific instance in which an inmate was actually denied

24  access to the courts." Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).  Defendants argue

25  that at his deposition plaintiff testified that a case he was proceeding with, apparently in this

26  court, was dismissed because legal mail forwarded to him at the jail from Atascadero was not

1  properly processed.  In other words, defendants argue, the problem was with Atascadero and not

2  the jail.

3        At his deposition, plaintiff testified that the jail refused to accept mail addressed

4  to him because it did not contain his cell number and jail identification number in his address, as

5  required by jail policy.  Plaintiff's Deposition, p. 58.  In his opposition, plaintiff argues that the

6  jail policy of requiring the jail booking number and cell location on the address violated his right

7  to access the courts because it is too strict.  Regarding how often this happened plaintiff testified,

8           Just a couple of times.  One thing was from court and others were just letters, I
            believe.  Could have been letters from the court, but every time I go between ASH
9           [Atascadero State Hospital] and I haven't been from here to there, or to the jail or
            to the hospital, things seemed to get lost in forwarding or not getting forward or it
10          takes too long.

11  Id.

12        In his opposition/cross-motion, plaintiff does not dispute that a case he was

13  proceeding with in this court was dismissed because mail forwarded to him from Atascadero

14  State Hospital was returned undelivered because the address did not comply with jail policy.

15  Plaintiff again argues that the jail address policy is unreasonable.

16        Requiring a certain address format in a jail setting is not at all something the

17  Constitution would be concerned with.  Also, plaintiff does not identify the actual case from this

18  court that was dismissed.  Plaintiff has filed several actions in this court.  The court cannot find

19  any action that was dismissed in 2005.  For this reason, the court finds this claim to be

20  unsupported.  Accordingly, defendants are entitled to summary judgment as to this claim.

21        Plaintiff argues that his Sixth Amendment right to counsel was violated when

22  defendants required him to use non-confidential telephones to contact his lawyer.

23        The right to confidentiality of communications between an attorney and their

24  client is a vital ingredient to the right of court access.  Bach v. Illinois, 504 F.2d 1100, 1102 (7th

25  Cir. 1974).  The government violates the right to effective assistance of counsel by interfering in

26  certain ways with the ability of counsel to make independent decisions about how to conduct the

1  defense.  Perry v. Leeke, 109 S. Ct. 594, 599 (1989).  A prisoner who has not been completely

2  denied access to his attorney must present facts showing that he has been prejudiced.  Id.

3         In the instant case, defendants argue that plaintiff did not allege any injury as a

4  result of the alleged non-confidential telephone calls.  Plaintiff does not claim that he was

5  prevented from having confidential meetings with his attorney in the jail.  The record contains

6  several references to visits to plaintiff by his attorney and there is no claim that these visits were

7  not confidential.  Accordingly, defendants should be granted summary judgment as to this claim.

8         Plaintiff also argues that he was denied his right to access the courts due to

9  inadequate law library access while housed at the jail.  As discussed above, in order to state a

10 colorable claim for violation of the right to access the courts, plaintiff must allege an actual

11 injury.  Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174 (1996).  Because plaintiff has

12 demonstrated no actual injury as a result of inadequate law library access, defendants are entitled

13 to summary judgment as to this claim.

14         *Claim 9: Right to Privacy*

15         In claim 9 plaintiff alleges that defendants' policies, procedures, practices and

16 customs do not permit privacy in situations including, but not limited to the following:

17 showering, sleeping, using toilets, visiting, using the telephone or mail, visitation.  Amended

18 Complaint, ¶ 114.  Because the court addressed plaintiff's claims regarding visitation above, it

19 will not be addressed here.

20         Defendants argue that they are entitled to summary judgment as to the claim

21 regarding showers, toilets and sleeping on ground that plaintiff does not have a privacy right in

22 showering and using a toilet.  In support of this claim, defendants cite Johnson v. Phelan, 69 F.3d

23 144 (7th Cir. 1995) and several other cases.  Defendants also argue that there are no allegations

24 that defendants had a policy of allowing deputy sheriff's of the opposite sex to watch plaintiff

25 using the shower or toilet.

26 \\\\\\

1    "It is clearly established that the Fourteenth Amendment protects a sphere of

2    privacy, and the most 'basic subject of privacy...the naked body.'" Hydrick, 500 F.3d at 1000,

3    quoting Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir. 1985). "While the circumstances of

4    institutional life demand that privacy be limited, it is clearly established that gratuitous invasions

5    of privacy violate the Fourteenth Amendment. Id. This calls for a highly factual inquiry. Id. "In

6    Grummett, for example, we considered the gender of those prison officials who viewed inmates,

7    the angle and duration of viewing, and the steps the prison had taken to minimize invasion of

8    privacy. Id.

9        The court has reviewed plaintiff's amended complaint and can find no allegations

10   specifically describing the alleged violations of his right to privacy concerning showering,

11   sleeping or using toilets. The court cannot find a violation of plaintiff's right to privacy

12   regarding these matters based on the conclusory allegations set forth above. Accordingly,

13   defendants should be granted summary judgment as to these claims.

14       Plaintiff suggests that the jail procedures for clothing and bed linen exchange

15   violated his right to privacy. Amended Complaint, ¶ 59. In particular, plaintiff alleges that he

16   was required to strip nude, wrap a towel around his waist and walk from his cell to the central

17   area to obtain clean clothing and linens. Id. Plaintiff alleges that this took place in the full view

18   of female staff and in full view of visitors looking down from the visiting area. Id.

19       Because plaintiff was not naked, and had a towel wrapped around his waist, the

20   court does not find he was subject to a violation of his right to privacy. Accordingly, defendants

21   are entitled to summary judgment as to this claim.

22       Plaintiff also alleges that he was denied his right to privacy regarding the use of

23   the telephone and mail. See Amended Complaint, ¶¶ 42, 43. Regarding mail, plaintiff alleges

24   that "normal" mail was open, read and inspected before it was given to him. Id., ¶ 43. The court

25   presumes that by "normal" mail, plaintiff is referring to non-legal mail.

26   \\\\\

1    Defendants argue that they are entitled to summary judgment on grounds that

2    prison officials may inspect non-legal mail for contraband without violating a prisoner's

3    constitutional rights.  See Smith v. Boyd, 945 F.2d 1041, 1043 (9th Cir. 1991) (upholding

4    inspection of incoming mail); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding

5    inspection of outgoing and incoming mail).  To the extent plaintiff challenges the inspection of

6    his incoming non-legal mail, defendants are entitled to summary judgment.

7    Plaintiff also alleges that his normal mail was read before it was given to him.

8    However, plaintiff provides no facts in support of this claim.  Plaintiff does not allege how he

9    knows his mail was read, nor what particular pieces of mail were read.  Because this claim is

10   vague and conclusory, the court recommends that defendants be granted summary judgment.

11   Regarding the phone, plaintiff argues that his calls were monitored and recorded

12   and that the system had a recording message identifying the call as being placed from an inmate

13   in the jail.  Id.  Again, common sense requires the finding that such calls need to be monitored in

14   a jail setting.

15   *Claims 23, 24: Freedom of Expression and Religion*

16   In claim 23, plaintiff alleges that defendant violated his First Amendment right to

17   freedom of expression by denying him access to computers and the internet.

18   Defendants argue that plaintiff has no constitutional right to a computer or internet

19   access in and of itself.  In support of this claim, defendants cite Nelson v. Giurbino, 395 F. Supp.

20   2d 946 (S.D. Cal. 2005).  Nelson involved an action brought by a state prisoner alleging that

21   prison officials violated his First Amendment rights by denying him access to internet generated

22   materials.  The district court found that the claim for injunctive relief was mooted by issuance of

23   the Ninth Circuit's state-wide injunction against enforcement of such a policy in Clement v.

24   California Department of Corrections, 364 F.3d 1148 (9th Cir. 2004).  Nelson is not on point.

25   This court is aware of no case standing for the proposition that civil detainees

26   have a free-standing First Amendment right to access computers and/or the internet.  A review of

1    the relevant case law does not support such a claim.  For that reason, no further discussion is

2    required and defendants should be granted summary judgment as to this claim.

3             In claim 24, plaintiff alleges that defendants violated his First Amendment right to

4    religious freedom by denying him his right to participate in religious services and activities.

5    Defendants move for summary judgment as to this claim on grounds that plaintiff's deposition

6    testimony demonstrates that plaintiff was not religious and was not able to attend religious

7    services because he was out to court most of the time.

8             At his deposition, when asked whether he was religious, plaintiff responded, "No,

9    not that much."  Plaintiff's deposition, p. 63.  Plaintiff first testified that the jail had "civil Bible

10   study" but that sex offenders could not go.  Id., p. 86.  When asked whether he wanted to go,

11   plaintiff testified, "I can't recall. At the time, but I imagine so because there is nothing else to do.

12   You're bored.  You can't imagine how boring being in a county jail cell is for 24 hours a day."

13   Id., pp. 86-87.  Plaintiff went on to testify that there were Bible study meetings, but he was in

14   court when they were held on all but one occasion.  Id., pp. 87-88.

15            To be afforded protection by the free exercise clause of the First Amendment, the

16   plaintiff must have a religious belief that is sincerely held.  Malik v. Brown, 16 F.3d 330, 333

17   (9th Cir. 1994).  Plaintiff's testimony that he is not that religious and that he wanted to go to

18   Bible study meetings because he was bored demonstrates that his religious beliefs are not

19   sincerely held.  Plaintiff's inability to attend Bible study in order to alleviate boredom does not

20   constitute a violation of his First Amendment rights.  Accordingly, defendants should be granted

21   summary judgment as to this claim.

22            J.  Allegations not Linked

23            The amended complaint includes a few factual allegations not specifically linked

24   to any of the 29 claims.  The court will address these claims to the extent they are addressed in

25   the pending motions.

26   \\\\\

                                             27

1    Plaintiff alleges that his health deteriorated while in the jail and that he did not

2    receive adequate medical care.  Plaintiff's Statement of Undisputed Facts.  Plaintiff alleges that

3    he became diabetic while housed at the jail.  Amended Complaint, ¶ 61.  Plaintiff also alleges

4    that he suffered significant aggravation of his hypertension, blood glucose levels, arthritis,

5    cardiac conditions and vertigo.  Id.  The court construes these allegations to state a claim for

6    inadequate medical care in violation of the substantive due process clause of the Fourteenth

7    Amendment.

8        Plaintiff does not specifically describe the medical treatment or lack of treatment

9    he is challenging.  Plaintiff's suggestion that he developed diabetes due to inadequate medical

10   treatment is also not supported.  For these reasons, defendants should be granted summary

11   judgment as to this claim.

12       Plaintiff also alleges that because defendants delayed in returning him to the

13   hospital after his commitment proceedings were concluded, his scheduled neurosurgery was

14   cancelled.  Plaintiff's Statement of Undisputed Fact, no. 36; amended complaint, ¶ 80-81.

15   Plaintiff alleges that as of the date of amended complaint, his appointment with the neurosurgeon

16   had still not been rescheduled.  Amended Complaint, ¶ 81.  The court construes these allegations

17   to state a claim for violation of the right to substantive due process.

18       Plaintiff has presented no evidence demonstrating that defendants were

19   responsible for the delay in the rescheduling of his neurosurgery following his return to the

20   hospital.  Nor has plaintiff presented any evidence demonstrating that defendants were aware that

21   plaintiff had a scheduled neurosurgery.  For these reasons, defendants should be granted

22   summary judgment as to this claim.

23       Plaintiff alleges that the temperature in his cell was 55 degrees.  Plaintiff's

24   Statement of Undisputed Facts no. 55.  In the amended complaint, plaintiff alleges that he was

25   subject to "ambient air temperatures of approximately 55 degrees in the SCJ which is far cooler

26   than is comfortable..."  Amended Complaint, ¶ 35.  Defendants have not specifically addressed

1   this claim.  However, the allegation in the amended complaint does not state where in the jail

2   plaintiff experienced these conditions.  For example, if plaintiff temporarily experienced cool

3   temperatures while waiting to be transported to court, this court would not find a violation of

4   plaintiff's Fourteenth Amendment rights.  However, if the temperature in plaintiff's cell was

5   consistently 55 degrees, the court would find a violation of plaintiff's Fourteenth Amendment

6   rights.  The court does not find that plaintiff is entitled to summary judgment as to this claim

7   because it is not clear where he experienced these cool conditions.  Defendants are also not

8   entitled to summary judgment as to this claim because they have not specifically addressed these

9   allegations.

10          J.  State Law Claims

11          Defendants move for summary judgment as to plaintiff's state law claims based

12   on plaintiff's failure to comply with the requirements of the California Government Tort Claims

13   Act.  See Cal. Gov. Code §§ 900 et seq.  Plaintiff's opposition/cross-motion does not address this

14   argument.  Based on plaintiff's failure to oppose defendants' argument, the court concludes that

15   plaintiff has consented to defendants' motion for summary judgment regarding his state law

16   claims.  In the alternative, the court finds that defendants' motion has merit.

17          K.  Monell Liability

18          Defendants move for summary judgment on grounds that the claims against

19   defendant Sacramento County because plaintiff has not demonstrated liability pursuant to Monell

20   v. Dept. of Social Services, 436 U.S. 658, 694 (1978).  For a municipality to be liable for

21   violation of constitutional rights pursuant to 42 U.S.C. § 1983 plaintiff must establish that the

22   municipality had a deliberate policy, custom, or practice that was the "moving force" behind the

23   constitutional violation he suffered.  Galen v. City of Los Angeles, 477 F.3d 652, 667 (9th Cir.

24   2007), citing Monell, 436 U.S. at 694-95, 98 S.Ct. 2018.[6]

25

26          [6] Defendants also argue that plaintiff must demonstrate that the at-issue policy amounted
    to deliberate indifference to plaintiff's constitutional rights, citing Oviatt v. Pearce, 954 F.2d

1        As discussed above, the court recommends that the following claims survive

2   summary judgment: 1) inadequate out-of-cell time, including dayroom access, in violation of the

3   Fourteenth Amendment; 2) the light in plaintiff's cell was on all night in violation of the

4   Fourteenth Amendment; 3) plaintiff required to use a communal razor in violation of the

5   Fourteenth Amendment; 4) shower unsanitary in violation of the Fourteenth Amendment; 5)

6   inadequate outdoor exercise in violation of the Fourteenth Amendment; 6) denial of use of

7   wheelchair despite court order in violation of Fourteenth Amendment; 7) inadequate clothing in

8   violation of the Fourteenth Amendment; 8) temperature of jail too cold in violation of the

9   Fourteenth Amendment.

10        Defendants argue that plaintiff has not demonstrated that any of the challenged

11   conditions was created as a result of a policy or custom.  Defendants argue that any failure on the

12   part of jail officials to give plaintiff more privileges within his pod was not pursuant to any

13   custom or policy.

14        In the amended complaint, plaintiff alleges that defendants established the policies

15   that determined the treatment of civilly confined person in the jail.  Amended Complaint, ¶¶ 16,

16   20.  Plaintiff also alleges, and defendants concede by way of the declaration of Deputy Daw, that

17   the housing of civil inmates was pursuant to a county policy.  In other words, the decision

18   regarding plaintiff's housing and out-of-cell access was not based on an ad hoc decision of an

19   individual Sheriff's Deputy.  Plaintiff's claims regarding when he received pat down searches,

20   i.e. during booking and transportation to and from the jail, also suggest that they were made

21   pursuant to policy rather than ad hoc decisions.  Whether all of the challenged conditions resulted

22

23   1470, 1474 (9th Cir. 1992).  In Oviatt, the Ninth Circuit cited City of Canton v. Harris, 489 U.S.
     378, 389-91 (1989) for this proposition.  In City of Canton, the Supreme Court held that a
24   municipality may be liable for if it fails to properly train peace officers and the "failure to train
     amounts to deliberate indifference to the rights of persons with whom the [officers] come into
25   contact."  City of Canton, 489 U.S. at 388. 109 S.Ct. 1197.  In the instant case, plaintiff does not
     allege that defendant Sacramento County failed to train its peace officers.  Therefore, plaintiff is
26   not required to prove that the challenged policies amounted to deliberate indifference to his
     constitutional rights.

from a policy, i.e. use of communal razor, light on in cell all night, etc., is not clear.  However,

plaintiff has made sufficient allegations, which defendants have not successfully opposed, to

withstand summary judgment on <u>Monell</u> grounds.  Accordingly, defendants are not entitled to

summary judgment on this ground.

  L. <u>Defendant Blanas</u>

   Defendants move for summary judgment as to the claims against defendant

Blanas on grounds that he has no liability in his official or individual capacity.

   The court agrees that the claims against defendant Blanas in his official capacity

should be dismissed.  "There is no longer a need to bring official capacity actions against local

government officials, for under [<u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978)], local government units can be sued directly for damages and injunctive

relief or declaratory relief."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87

L.Ed.2d 114 (1985).  Further,

> [a]fter the <u>Monell</u> holding, it is no longer necessary or proper to name as a
> defendant a particular local government officer acting in official capacity.  To do
> so only leads to a duplication of documents and pleadings, as well as wasted
> public resources for increased attorney fees.  A plaintiff cannot elect which of the
> defendant formats to use.  If both are named, it is proper upon request for the
> Court to dismiss the official capacity officer, leaving the local government entity
> as the correct defendant.  If only the official capacity officer is named, it would be
> proper for the Court upon request to dismiss the officer and substitute instead the
> local government entity as the correct defendant.

<u>Luke v. Abbott</u>, 954 F. Supp. 202, 204 (C.D. Cal. 1997).

   Because plaintiff is proceeding with his official capacity action against defendant

Sacramento County, defendant Blanas should be granted summary judgment as to the claims

made against him in his official capacity.

   Defendants argue that plaintiff has not sufficiently linked defendant Blanas to the

alleged deprivations to justify individual capacity liability.  Ordinarily, a person is subject to

liability under 42 U.S.C. § 1983 if he commits or directs an act or omission that violates a

plaintiff's constitutional rights.  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978); <u>Taylor v.</u>

1   List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Supervisory liability exists even without overt

2   personal participation in the offensive act if supervisory officials implement a policy so deficient

3   that the policy itself is a repudiation of constitutional rights and is the moving force of the

4   constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

5          Plaintiff alleges that Blanas implemented the policies regarding the conditions

6   under which civil detainees at the jail would be housed.  Amended Complaint, ¶ ¶ 18, 20.  There

7   is no evidence that the conditions under which civil detainees were housed were as a result of ad

8   hoc decisions rather than official policy.  Whether all of the challenged conditions resulted from

9   a policy, i.e. use of communal razor, light on in cell all night, etc., is not clear.  However,

10  plaintiff has made sufficient allegations, which defendants have not successfully opposed, to

11  withstand summary judgment on grounds that the conditions were the result of a policy

12  implemented by defendant Blanas.  Accordingly, defendant Blanas should not be granted

13  summary judgment in his individual capacity.

14          M.  Qualified Immunity

15          Defendants argue that defendant Blanas is entitled to qualified immunity.

16  Determining whether a defendant is entitled to qualified immunity involves a sequential three

17  step analysis: 1) viewing the facts in the light most favorable to plaintiff whether there was a

18  constitutional violation; 2) whether the constitutional right was well established; and 3) whether

19  it was unreasonable for the official to believe his actions constitutional.  Saucier v. Katz, 533

20  U.S. 194, 200-201, 121 S. Ct. 2151, 2155-2156 (2001).

21          Defendants argue that defendant Blanas is entitled to qualified immunity because

22  plaintiff was not deprived of any constitutional rights.  As discussed above, the court found that

23  defendants were not entitled to summary judgment as to eight of plaintiff's claims.  Accordingly,

24  defendants are not entitled to qualified immunity based on the first prong of the qualified

25  immunity analysis.

26  \\\\\

1    Defendants next argue that the law regarding treatment of SVPs was not clearly

2    established during plaintiff's second period of incarceration at the jail.  In support of this

3    argument, defendants cite <u>Jones v. Blanas</u>, 393 F.3d 918 (9th Cir. 2004), which was decided in

4    2004.

5    Defendants' citation to <u>Jones</u> is puzzling because it was decided on December 27,

6    2004.  The instant action challenges conditions at the jail from December 29, 2004, to February

7    8, 2005.  <u>Jones</u>, as discussed above, involved a civil rights action against defendant Blanas by a

8    civil detainee incarcerated at the jail pursuant to the SVPA.  In <u>Jones</u>, the Ninth Circuit set forth

9    the standards under which the conditions of confinement for persons incarcerated under the SVP

10   were to be evaluated.  <u>Jones</u> put defendant Blanas on notice regarding the conditions under which

11   plaintiff, an SVP detainee, was to be housed.

12   For the reasons discussed above, the court does not find that defendant Blanas is

13   entitled to qualified immunity based on <u>Jones v. Blanas</u>.  The law regarding conditions of

14   confinement under which SVP detainees could be housed was clearly established at the time

15   plaintiff was housed at the Sacramento County Jail beginning on December 29, 2004.

16   Accordingly, defendant is not entitled to summary judgment on this ground.

17   N.  <u>Punitive Damages</u>

18   Defendants next move for summary judgment as to plaintiff's request for punitive

19   damages against defendants in their official capacities.  Because the court recommends that

20   defendant Blanas be granted summary judgment as to the claims made against him in his official

21   capacity, there is no need to address this argument as to him.

22   Municipalities are immune from punitive damages under 42 U.S.C. § 1983.  <u>City</u>

23   <u>of Newport Beach v. Fact Concerts</u>, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762 (1981).

24   Accordingly, plaintiff's request for punitive damages against defendant Sacramento County

25   should be stricken.

26   \\\\\

1      IT IS HEREBY RECOMMENDED that:

2      1.  Plaintiff's October 22, 2007, summary judgment motion be denied;

3      2.  Defendants' July 20, 2007, summary judgment motion be denied as to the

4 following claims:  1) inadequate out-of-cell time, including dayroom access, in violation of the

5 Fourteenth Amendment; 2) the light in plaintiff's cell was on all night in violation of the

6 Fourteenth Amendment; 3) plaintiff required to use a communal razor in violation of the

7 Fourteenth Amendment; 4) shower unsanitary in violation of the Fourteenth Amendment; 5)

8 inadequate outdoor exercise in violation of the Fourteenth Amendment; 6) denial of use of

9 wheelchair despite court order in violation of Fourteenth Amendment; 7) inadequate clothing in

10 violation of the Fourteenth Amendment; 8) jail temperature too cold in violation of the

11 Fourteenth Amendment; defendants' motion for summary judgment on grounds that plaintiff has

12 not demonstrated Monell liability as to defendant County be denied; defendants' motion for

13 summary judgment on grounds that defendant Blanas has no liability in his individual capacity

14 and is entitled to qualified immunity be denied;

15      3.  Defendants' July 20, 2007, summary judgment motion should be granted in all

16 other respects.

17      These findings and recommendations are submitted to the United States District

18 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

19 days after being served with these findings and recommendations, any party may file written

20 objections with the court and serve a copy on all parties.  Such a document should be captioned

21 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22 shall be served and filed within ten days after service of the objections.  The parties are advised

23 \\\\\

24 \\\\\

25 \\\\\

26 \\\\\

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:   02/13/08

                                          /s/ Gregory G. Hollows

4                                          _____

                                          UNITED STATES MAGISTRATE JUDGE

5  carmony.sj

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26